**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JARROD CHRISTOPHER THOMPSON,

                        Plaintiff,

- v -                                        Civ. No. 9:18-CV-1235
                                                    (LEK/DJS)

NURSE KELLY, *et al.*,

                        Defendants.

**APPEARANCES:**                                      **OF COUNSEL:**

JARROD CHRISTOPHER THOMPSON
Plaintiff, *Pro Se*
17-A-3501
Hale Creek ASACTC
P.O. Box 950
Johnstown, NY 12095

HON. LETITIA JAMES                           NICHOLAS LUKE ZAPP,
New York State Attorney General           ESQ.
Attorney for Defendant Kelly               Assistant Attorney General
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER

*Pro se* Plaintiff Jarrod Christopher Thompson brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Dkt. No. 2, Compl. On initial review of the Complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A, the District Court

1

permitted Plaintiff's claims against the individual Defendants to proceed, and dismissed Plaintiff's claim against DOCCS. Dkt. No. 10. Currently before the Court is Defendant Kelly's Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that (1) Plaintiff failed to exhaust his administrative remedies prior to commencing this action, and (2) Plaintiff's deliberate indifference claim fails as a matter of law. Dkt. No. 15-1, Def.'s Mem. of Law. Plaintiff has filed an opposition to the Motion. Dkt. No. 17, Pl.'s Opp.

## I.  STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer,* 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski,* 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)). Moreover, "even if not attached or incorporated by reference, a document 'upon

2

which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d at 47). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id*.

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn,* 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. at 697 (citing *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer

3

possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. at 679-80.

## II.  FACTS[1]

On September 15, 2017, Plaintiff arrived at Franklin Correctional Facility. Compl. at p. 5. He told a nurse that he had a heart problem, and she took his vitals. *Id*. Plaintiff claims he received no help at sick call, and was only told he was scheduled to see a doctor soon. *Id.* On October 10, 2017, Plaintiff had more severe symptoms, and Nurse Kelly gave him cough syrup, and other nurses repeatedly told him he would be seeing a doctor the following week. *Id.* Plaintiff suffered a mild heart attack and had to be flown to

---

[1] The facts here are derived from Plaintiff's Complaint and are stated in the light most favorable to him.

Albany Medical Center, and received surgery on January 10, 2018. *Id.* Plaintiff now has to take medicine every day and will have to for the rest of his life; he brings an Eighth Amendment deliberate indifference claim and seeks monetary compensation. *Id.* at pp. 5 & 7.

### III.  DISCUSSION

#### A.  Exhaustion of Administrative Remedies

Defendant moves for dismissal on the basis that Plaintiff failed to exhaust his administrative remedies prior to commencing this action. Def.'s Mem. of Law at pp. 3-7. The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id*. at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

5

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id*. at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Once raised, the defendant bears the burden of proving that administrative remedies have not been exhausted. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999) (citations omitted). The party opposing the affirmative defense "may delay the ultimate

determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id*. (citations omitted).

Typically, this inquiry is fact specific and would not be appropriate for resolution on a motion to dismiss. However, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *McCoy v. Goord*, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003) (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74-75 (2d Cir. 1998)). Thus, if it is apparent from the face of Plaintiff's Complaint that he failed to exhaust his administrative remedies prior to bringing this action, then a Rule 12(b)(6) motion may be the proper vehicle to raise the defense.

Plaintiff submitted a *pro forma* complaint typically utilized by *pro se* inmates seeking to vindicate their rights pursuant to 42 U.S.C. § 1983. Therein, he indicated that there is a grievance procedure at his facility, and that he did not file a grievance about the events described in the Complaint at any correctional facility. Compl. at p. 6. Taking Plaintiff's statements in his Complaint as true, it would appear from the face of the Complaint that he had not completed the administrative remedies available to him prior to bringing this civil action; thus, Defendant may properly raise this affirmative defense by way of her Motion to Dismiss.

### 1. *Plaintiff's Failure to Exhaust Administrative Remedies*

In this case, Plaintiff admitted in his Complaint that he did not file a grievance regarding the events alleged in the Complaint. Compl. at p. 6. Plaintiff argues in his opposition to the Motion that he "assumed that going to sick call every single week after

7

being told [he] would see a doctor would be considered taking the appropriate measures." Pl.'s Opp. However, the PLRA requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. at 93. To the extent Plaintiff contends that by going to sick call he put corrections staff on notice of his allegations, such informal means of grieving do not satisfy the PLRA's exhaustion requirement. *See Davis v. Doe*, 2017 WL 8640829, at 3 (N.D.N.Y. Dec. 29, 2017); *see also Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought, does not constitute 'proper exhaustion.'") (internal citation omitted). "Regardless of whether . . . informal complaints put the prison officials on notice of his grievance 'in a substantive sense,' . . . to satisfy the PLRA a prisoner must also procedurally exhaust his available administrative remedies." *Macias v. Zenk*, 495 F.3d at 43. As such, Plaintiff's actions taken in going to sick call do not satisfy the PLRA's exhaustion requirements. *See Crook v. Sanchez*, 2014 WL 7399313, at *14 (E.D.N.Y. Feb. 12, 2014) (holding that writing to medical did not satisfy the exhaustion requirement, and collecting cases with similar findings).

Accordingly, Plaintiff did not exhaust his administrative remedies. The Court will discuss below whether Plaintiff's contentions may provide a valid excuse for his failure to exhaust.

*2. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused*

A prisoner's failure to exhaust administrative remedies may be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. "An inmate . . . must

8

exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Supreme Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In his Opposition, Plaintiff contends that he did not follow the exhaustion procedure because (1) he believed that using the grievance procedure would be futile, and (2) he feared retaliation.  Pl.'s Opp.  Plaintiff describes that "through [his] experience dealing with the grievance program [he] felt that nothing would come of it."  Pl.'s Opp. The case law is clear that "[p]risoners are required to exhaust their administrative remedies 'even if they believe that administrative remedies would be ineffective or futile.'" *Harrison v. Goord*, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009); *see also Woodford v. Ngo*, 548 U.S. at 89-90 (stating that "exhaustion requirements are designed to deal with parties who do not want to exhaust," including those who "conclude − correctly or incorrectly − that exhaustion is not efficient in that party's particular case."). As such, Plaintiff's contention that he believed nothing would come of filing a grievance is unavailing.

Plaintiff also alleges that he did not submit a grievance because he feared corrections staff would retaliate against him.  Pl.'s Opp.  Under *Ross*, threats or other

9

intimidation by prison employees may render administrative remedies unavailable. *Ross v. Blake*, 136 S. Ct. at 1860, n.3. Plaintiff alleges in his Complaint that he did not file a grievance because he feared mistreatment; he filed a grievance about a package and the package room began denying his packages after that. Compl. at pp. 6-7. He elaborates in his Opposition that after he filed a grievance about a package, he never received the package; "nothing favorable came of that grievance," and his next six packages were all refused by the facility. Pl.'s Opp. Significantly, this allegedly occurred in "early 2018," Pl.'s Opp., while Plaintiff alleges Nurse Kelly's alleged indifference occurred in September and October of 2017, and so could not have been the basis for not filing a grievance against Kelly.

"Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable." *Rodriguez v. Cross*, 2017 WL 2791063, at *8 (N.D.N.Y. May 9, 2017) (citing *Ross v. Blake*, 136 S. Ct. at 1860, n. 3). As the Second Circuit has stated, "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). Here, Plaintiff has merely stated a "generalized fear of retaliation," without allegations of any specific threats or other actions that would prevent him from filing a grievance. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) ("[P]laintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance."); *see also Rodriguez v. Cty. of Suffolk*, 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014) ("Courts tend to find mere 'generalized fear' when no

actual threat was made.") (internal citation omitted). Indeed, here, Plaintiff does not allege that "he was subjected to any specific, affirmative threats of retaliation." *Bookman v. Lindstrand*, 2018 WL 3121688, at *10 (N.D.N.Y. Feb. 14, 2018); *see also Rodriguez v. Cty. of Suffolk*, 2014 WL 3531897, at *5. In any event, "Plaintiff's prior experience filing grievances is not a well-founded basis for him to fear retaliation from filing a grievance relative to the present incident." *White v. Dishaw*, 2017 WL 4325770, at *3 (N.D.N.Y. June 20, 2017). As such, Plaintiff's fear of retaliation is insufficient to excuse his failure to exhaust.[2]

Plaintiff has therefore not made allegations that could satisfy any of the three circumstances that could excuse failing to exhaust under *Ross*. Accordingly, the Court finds that Plaintiff has not exhausted his administrative remedies, and that the failure to exhaust was not excusable. The Court therefore recommends that Defendant Kelly's Motion be granted based on Plaintiff's failure to exhaust.[3]

---

[2] Plaintiff also submits a separate letter regarding recent occurrences regarding his medical care that he believes to be retaliatory, although he does not assert what he believes the retaliation was in relation to. Dkt. No. 18. The Court notes that, to the extent Plaintiff intends the letter to explain his fear of retaliation in relation to his failure to exhaust, it appears to relate solely to actions taken after Plaintiff's time to file a grievance expired, and thus would not serve to provide an excuse for his failure to exhaust.

[3] Because the Court recommends that Defendant Kelly's Motion be granted based upon Plaintiff's failure to exhaust his administrative remedies, it does not reach her contentions regarding the merits of Plaintiff's deliberate indifference claim. Def.'s Mem. of Law at pp. 8-11. However, were the Court to reach this issue, it would recommend denying the Motion. Giving deference to Plaintiff's *pro se* status, "the Court is unable to conclude at this early stage−and on the basis of the Complaint alone−that the Defendant[] [was] not deliberately indifferent to [Plaintiff's] serious medical needs. The Court must await further development of the facts." *Silvera v. Conn. Dep't of Corr.*, 726 F. Supp. 2d 183, 192 (D. Conn. 2010) (citing *Chance v. Armstrong*, 143 F.3d 698, 703-04 (2d Cir. 1998)).

### B. John Doe Defendants

As to Plaintiff's claims against the four unnamed Nurse Doe Defendants, the Court recommends dismissing these claims as well. Plaintiff's claims against these Defendants cannot proceed for the same reason as his claim against the named Defendant: he has failed to exhaust his administrative remedies. As such, these claims suffer from the same defect and are subject to dismissal. *See Bush v. Danziger*, 2006 WL 3019572, at *3 (S.D.N.Y. Oct. 23, 2006) (dismissing *sua sponte* claims against John Doe Defendants because claims would be barred on the same basis as claims against moving defendants); *Ali v. Ramos*, 2018 WL 1353210, at *1, n.1 (S.D.N.Y. Mar. 14, 2018) (considering *sua sponte* dismissing the Complaint against a John Doe defendant, and noting that such would be appropriate because the plaintiff had an opportunity to be heard through responding to the named defendant's motion to dismiss); *Preterotti v. Lora*, 2016 WL 6810883, at *9 (Oct. 6, 2016).

### IV. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 15) be **GRANTED** and that Plaintiff's claims against Defendant Kelly be **DISMISSED**; and it is further

**RECOMMENDED**, that Plaintiff's claims against Nurse Doe Nos. 1-4 be **DISMISSED** *sua sponte*; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to the action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: April 4, 2019
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).